NOTE:  This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**In re:  CONFEDERACION DE ASOCIACIONES AGRICOLAS DEL ESTADO DE SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., ASOCIACION DE PRODUCTORES DE HORTALIZAS DEL YAQUI Y MAYO, SISTEMA PRODUCTO TOMATE,**
*Petitioners*

———————————

2019-123

———————————

On Petition for Writ of Mandamus to the United States Court of International Trade in No. 1:19-cv-00059-JCG, Judge Jennifer Choe-Groves.

———————————

**ON PETITION**

———————————

Before LOURIE, BRYSON, and TARANTO, *Circuit Judges*.

PER CURIAM.

## O R D E R

Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C., and other Mexican agricultural groups have asked this court to issue a writ of mandamus to the United States Court of International Trade.  We deny the petition.

I

This case has a long procedural history. In April 1996, Commerce initiated an antidumping duty investigation to determine whether fresh tomatoes from Mexico were being sold in the United States at less than fair value. Following an investigation, Commerce made an affirmative preliminary dumping determination in October 1996. Commerce then calculated the dumping margins for the exporters that were individually investigated as well as for all other exporters. Commerce also directed the posting of cash deposits or bonds for each entry of fresh tomatoes into the United States and suspended liquidation of all such entries, pursuant to section 733 of the Tariff Act of 1930, as amended ("the Tariff Act"), 19 U.S.C. §1673b(d)(1)(B).

Shortly thereafter, Commerce entered into an agreement pursuant to section 734(c) of the Tariff Act, 19 U.S.C. §1673c(c), with the exporters who were responsible for substantially all the imports of fresh tomatoes from Mexico. The exporters agreed not to sell tomatoes in the United States at less than a specified "reference price," and Commerce agreed to terminate the collection of cash deposits or bonds and to end the suspension of liquidation of entries of the subject tomatoes.

Over the next 22 years, the Mexican exporters withdrew from the suspension agreement on three occasions. Each time the exporters withdrew, Commerce invoked section 734(i)(1) of the Tariff Act, 19 U.S.C. §1673c(i)(1), which authorizes Commerce to terminate a suspension agreement if it determines that the agreement is being or has been violated, or if it determines that the agreement no longer meets the requirements of section 734. Pursuant to section 734(i)(1), Commerce on those occasions resumed its antidumping duty investigation, suspended the liquidation of entries, and required the posting of cash deposits or bonds for such entries, all based on the preliminary antidumping duty determinations made in the 1996

investigation. On each occasion, however, the parties entered into a new suspension agreement, and the antidumping duty investigation was again put on hold. The last such agreement was executed in 2013.

In February 2019, Commerce provided the petitioners with notice that it intended to withdraw from the 2013 suspension agreement pursuant to the withdrawal clause in the agreement. On May 7, 2019, Commerce provided notice of its intent to continue the suspended antidumping duty investigation, to suspend liquidation of the subject entries, and to require the posting of cash deposits and bonds. Commerce represented that its resumed antidumping duty investigation would be completed by September 2019. *See Fresh Tomatoes from Mexico: Termination of Suspension Agreement, Rescission of Administrative Review, and Continuation of the Antidumping Duty Investigation*, 84 Fed. Reg. 20,858 (May 13, 2019).

The petitioners promptly filed an action in the Court of International Trade ("the Trade Court") and moved for a temporary restraining order, for a preliminary injunction, and for summary judgment. In their request for injunctive relief, the petitioners asked the court to enjoin Commerce from ordering a suspension of liquidation of entries of fresh tomatoes from Mexico, resuming its antidumping duty investigation into those imports, and instructing U.S. Customs and Border Patrol to require a cash deposit or bond for each entry of the subject tomatoes.

Following expedited briefing and intervention by the Florida Tomato Exchange, an association of domestic tomato producers, the court held a hearing on May 16, 2019. On June 6, the court filed a 26-page order denying the requests for a temporary restraining order and a preliminary injunction. App. 5-30. While not conclusively ruling on the merits, the court concluded that the petitioners' claims were likely to fail. The court also found that the petitioners had not satisfied their burden of showing irreparable harm

and had not shown that the balance of hardships cuts in their favor. The public interest factor, the court found, was neutral.

On June 19, 2019, the court held a status conference after which the court ordered that briefing of the petitioners' summary judgment motion would be stayed until July 8, 2019, and that the government would be allowed to file any dispositive motion or an answer, together with an administrative record, by July 8, with further briefing of the dispositive motions and the petitioners' motion for summary judgment to be completed by August 5. App. 31-32. On June 28, the petitioners filed this petition for a writ of mandamus.

## II

The petitioners make three legal arguments in support of their mandamus petition: (1) that Commerce lacked statutory authority to restart the 1996 antidumping duty investigation, to suspend the liquidation of entries of fresh tomatoes from Mexico, and to require the collection of cash deposits or bonds in connection with those entries; (2) that in its Federal Register notice announcing its withdrawal from the suspension agreement, Commerce did not cite sections 733 and 735 of the Tariff Act, 19 U.S.C. §§ 1673b, 1673d, and the Trade Court therefore erred by suggesting that Commerce's actions could be justified based on those statutes; and (3) that the Trade Court erred by allowing the government to file an administrative record in this case, because the dispositive issue is purely legal and does not entail review on the administrative record.

1. The petitioners argue that because Commerce does not contend that the petitioners violated the suspension agreement or that the agreement no longer met the requirements of sections 734(b) or (c) of the Tariff Act, section 734(i)(1) does not provide the authority for Commerce to terminate the suspension agreement and reinstate the status quo as of the time immediately preceding the original

suspension agreement.  Nor, they contend, does Commerce have any such authority beyond section 734(i).  Because they contend that Commerce had no statutory authority at all to restart the 1996 antidumping duty investigation, the petitioners argue, the Trade Court should have issued a preliminary injunction prohibiting Commerce from reinstating the 1996 dumping margins, suspending liquidations of the subject entries, and requiring cash deposits or bonds on those entries.

Section 734(b) of the Tariff Act, 19 U.S.C. § 1673c(b), provides that Commerce may suspend an antidumping duty investigation "if the exporters of the subject merchandise who account for substantially all of the imports of that merchandise agree" to cease imports of the merchandise to the United States or to revise their prices to eliminate the calculated dumping margin.  Section 734(d), 19 U.S.C. §1673c(d). provides that Commerce may not accept such an agreement unless it is satisfied that suspension of the investigation is in the public interest and effective monitoring of the agreement is practicable.  The statute further provides, in section 734(i), 19 U.S.C. § 1673c(i), that if Commerce determines that a suspension agreement has been, or is being violated, or no longer meets the requirements of subsections (b) and (d) of section 734, Commerce may resume the investigation "as if its affirmative preliminary determination were made on the date of the determination [to terminate the suspension agreement]," and suspend liquidation of all unliquidated entries of the subject merchandise.  Section 734(i)(1), 19 U.S.C. § 1673c(i)(1).  The consequence of a resumption of the antidumping duty investigation would be that cash deposits or bonds would be required on the subject entries.  19 U.S.C. § 1673b(d)(1)(B).

The Federal Register notice in which Commerce announced its withdrawal from the agreement, 84 Fed. Reg. 20858 (May 13, 2019), stated: "In accordance with Section VI.B of the 2013 Agreement, Commerce is withdrawing from the 2013 Agreement effective May 7, 2019, which is

90 days after our February 6, 2019 notice to the signatories. Accordingly, Commerce is terminating the 2013 Agreement, effective May 7, 2019, and continuing the underlying AD investigation." *Id.* at 20860. The notice explained that the statute "does not identify the timing for completion of the investigation in this scenario. Therefore, we are looking to section 734(i)(1)(B) of the Tariff Act of 1930, as amended (the Act), for guidance. Consistent with section 734(i)(1)(B) of the Act, Commerce will continue the investigation as if it had published the affirmative preliminary determination under section 733(b) of the Act on the effective date of the termination, May 7, 2019." *Id.* Accordingly, Commerce suspended liquidation of the subject tomatoes and reimposed the requirement of antidumping duty cash deposits or bonds for entries of the subject merchandise "based on the preliminary dumping margins." *Id.* at 20861.

At the preliminary injunction hearing, government counsel confirmed that Commerce had invoked the termination clause of the 2013 suspension agreement, not section 734(i), as the basis for withdrawing from the agreement, but that Commerce had looked to the statute for guidance as to the procedure to follow upon the agreement's termination. App. 113–29.

The Trade Court held that the petitioners were not likely to succeed on the merits of their challenge to Commerce's actions, for three reasons. First, given that Commerce relied on the withdrawal clause of the 2013 suspension agreement as its basis for withdrawing from the agreement, the court found that the petitioners were not likely to show that Commerce took its actions under the authority of (and therefore subject to the limitations of) section 734(i). App. 15–16. Second, the court found that the petitioners were unlikely to be able to show that Commerce's actions were not authorized by sections 733 and 735 of the Tariff Act, 19 U.S.C. §§ 1673b, 1673d, which dictate the procedures Commerce must follow in making a preliminary determination and a final determination in an

antidumping investigation.   Under those statutes, the court explained, each of the steps taken by Commerce was required by section 733 following a preliminary antidumping duty determination.  App. 16–17.  Third, the court determined that because the steps taken by Commerce were required by sections 733 and 735, the petitioners' claims were likely to fail on the merits "before the court reaches the issue of whether Commerce's actions were permitted pursuant to" section 734(i).  App. 17.

Like the Trade Court, we find it unnecessary to resolve this issue conclusively.  Nonetheless, we uphold the Trade Court's determination that the petitioners are unlikely to succeed on the merits of their challenge to Commerce's actions.  As the Trade Court explained, Commerce stated that it was basing its withdrawal from the suspension agreement on the withdrawal provision of the agreement, not on section 734(i).  Regarding how to proceed after withdrawal, Commerce did not invoke section 734(i) as the source of authority for the present situation; rather, it looked to section 734(i) "for guidance" and took action "consistent with" what section 734(i) authorizes where it applies: resumption of the antidumping duty investigation, including the suspension of liquidations and the requirement of cash deposits or bonds, steps that are required by sections 733 and 735.

The petitioners contend that section 734(i)(1) identifies the "only" circumstances in which the end of a suspension agreement may result in resumption of the antidumping duty investigation, suspension of liquidation of entries, and a demand for cash deposits or bonds.  Pet. 4.  But the language of section 734(i)(1) does not contain the word "only," and the petitioners have not shown that it likely implies the absence of Commerce authority to take similar action in cases not expressly covered by section 734(i).  In light of all those circumstances, the Trade Court found it unlikely that the petitioners would succeed on their legal challenge to Commerce's actions, and we agree with that assessment.

2. The petitioners separately contend that Commerce should be limited to the grounds recited in its May 7, 2019, Federal Register notice to support the legality of its challenged activities. And in their brief, the petitioners suggest that Commerce relied on section 734(i) of the Tariff Act to justify the termination of the suspension agreement. But that is not an accurate characterization of Commerce's notice. As the Trade Court recognized, Commerce's statement that it "look[ed] to section 734(i)(1)(B) of the Tariff Act of 1930 . . . for guidance" and that it took action "consistent with section 734(i)(1)(B) of the Act" merely reflected that Commerce looked to section 734(i)(1)(B) by analogy; it was clear from the notice, as was confirmed in the preliminary injunction hearing, that Commerce based its withdrawal from the agreement on the termination clause of the agreement itself.

The petitioners further contend (Pet. 18–19, 21–23) that the Trade Court improperly invoked sections 733 and 735 of the Tariff Act, even though Commerce did not cite those statutes in its Federal Register notice. In particular, the petitioners point to the Trade Court's statement that it was the petitioners' burden "to prove that Commerce's actions could not be based on two other statutes that Commerce never mentioned or relied upon: section 733 of the Act, 19 U.S.C. § 1673b, and section 735 of the Act, 19 U.S.C. § 1673d."

The petitioners' characterization of the Trade Court's analysis misses the point of the Trade Court's ruling. In the quoted passage, the Trade Court was saying that Commerce's actions, upon terminating the suspension of the investigation, could properly be based on the general statutory provisions governing the procedure Commerce is required to follow in making preliminary and final determinations. Contrary to petitioners' contention, it was not necessary for Commerce to cite sections 733 and 735 simply for the point that once the suspension agreement was terminated, the procedures dictated by those provisions once

again became applicable. Those statutes simply set out the background principles that govern Commerce's actions in making preliminary and final antidumping duty determinations. The Federal Register notice is not rendered invalid by the failure of Commerce to expressly cite those statutory provisions.

3. Finally, the petitioners contend (Pet. 22, 24–27) that it was improper for the Trade Court to allow the government to prepare and file an administrative record in connection with further proceedings in the course of this litigation. While the petitioners view the issue before the Trade Court as purely legal, it was within that court's discretion to call for the filing of an administrative record as part of the future legal proceedings in this case. It may be that the future proceedings will be disposed of on legal grounds with no need for detailed factual development. But at this point the Trade Court has not crossed that bridge; it has simply called for the submission of an administrative record in the event that consultation of that record may shed light on some of the issues that may arise later in the litigation.

The petitioners argue that the Trade Court's review should be based solely on Commerce's published decision rather than a "post-hoc" administrative record. However, the Trade Court has not yet made any determination on the scope of review to be employed in the upcoming proceedings before the court; it has merely allowed the government to file that record and to mount arguments based on it. To the extent the petitioners are suggesting that the Trade Court will err in the future if it relies on information in the administrative record, they may raise that claim on appeal after a final judgment by the Trade Court.

In sum, none of the petitioners' legal challenges undermine the Trade Court's ruling that the petitioners have failed to show that they are likely to succeed on the merits of their challenge to Commerce's actions. In addition, the

petitioners make no arguments regarding the Trade Court's adverse findings on the issues of irreparable harm or the balance of hardships. The court's findings on those issues therefore stand unrebutted and provide further support for the Trade Court's order denying the petitioners' request for preliminary injunctive relief.

## III

Notably, apart from the merits of their legal arguments, the petitioners labor under several procedural burdens in this proceeding that counsel against the issuance of mandamus. First, the Trade Court's decision was to deny the petitioners' motion for a preliminary injunction. It is well recognized, however, that the standard of review of the denial of a preliminary injunction is abuse of discretion, even when the issue is raised in an appeal of right. *See Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017).

Second, and relatedly, in reviewing the denial of a preliminary injunction, a reviewing court typically examines the trial court's assessment of the four factors that bear on the availability of preliminary injunctive relief, and it does so with a deferential view as to the findings and conclusions of the trial court. *See Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1319 (Fed. Cir. 2012); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994).

Third, this case comes up on mandamus, which carries with it an especially exacting standard of review. Mandamus will lie only if the right to issuance of the writ is "clear and indisputable." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978) (citation and internal quotation marks omitted). Moreover, a party seeking a writ of mandamus bears the burden of demonstrating that it has no "adequate alternative" means to obtain the desired relief. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). Finally, issuance of a writ of mandamus is not a matter of right; even if the petitioner's claim on the merits

is clear and indisputable and the petitioner has no adequate alternative means to obtain relief, the court, "in the exercise of its discretion, must be satisfied that the issuance of the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 381 (2004).

In this case, those standards for obtaining relief by way of mandamus have not been satisfied.  For the reasons given by the Trade Court, the petitioners have failed to show that they have a "clear and indisputable" right to relief, particularly in light of the discretion accorded to a trial court in adjudicating a request for a preliminary injunction.  Likewise, petitioners have pointed to nothing in the record to suggest that the issuance of the writ, an exceptional action, is appropriate in this case.  And finally, the petitioners have not shown that they have no adequate alternative means to obtain the relief they seek.  The petitioners are seeking relief from the denial of a preliminary injunction.  Yet it is firmly established that an appeal lies from the denial of a preliminary injunction.  *See* 28 U.S.C. 1292(c); *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989).  As the Supreme Court has explained, "Ordinarily, mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27–28 (1943) (citations omitted).  In this case, therefore, not only do the petitioners have the option of raising their legal challenges through an appeal from an antidumping duty determination, they have a right to appeal from the denial of their request for a preliminary injunction.  Under these circumstances, mandamus would clearly be inappropriate.

12                               IN RE: CONFEDERACION DE ASOCIACIONES

Accordingly,

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

July 05, 2019                    /s/ Peter R. Marksteiner
    Date                         Peter R. Marksteiner
                                 Clerk of Court

s31