MOORE, Circuit Judge.
Apple Inc. appeals from an order of the district court denying Apple’s request for a permanent injunction against Samsung Electronics Company, Ltd.; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC (collec *1356 tively, “Samsung”). We vacate and remand for further proceedings.
BACKGROUND
In 2007, Apple introduced the iPhone, revolutionizing the cell phone market. To develop the iPhone, Apple invested billions of dollars over several years — investment that came with significant risk. J.A. 10424-26, 10585-98. Indeed, Apple executives referred to the iPhone as a “you bet your company” product because of the uncertainty associated with launching an untested product line in a new market. J.A. 10425-26, 10451-52.
To protect the inventions developed as a result of this investment, Apple applied for and received patents covering much of the innovative technology incorporated into the iPhone. Apple’s patents are numerous and include U.S. Patent Nos. 5,946,647; 8,046,721; and 8,074,172, the patents at issue in this appeal. Claim 8 of the '721 patent claims a touchscreen device that unlocks when the user makes contact with an “unlock image” and moves that image to a second, predefined location. '721 patent col. 19 1.51-col. 20 1.12. Although seemingly straightforward, Apple considered this feature so core to the Apple iPhone user experience that it opened the first iPhone ad with imagery illustrating the operation of this “slide to unlock” feature. J.A. 10433-34, 21014. Claim 9 of the '647 patent claims a system that detects “data structures” within text and generates links to specific actions that can be performed for each type of detected structure — for example, detecting a phone number in a text message and creating a link that would allow the user to dial the phone number or store it in an address book. '647 patent col. 7 11. 52-54, fig.7. And claim 18 of the '172 patent claims a method for automatically correcting spelling errors on touchscreen devices. '172 patent col. 12 1.49-col. 13 1.4.
The iPhone was undisputedly successful. After its release, reviewers praised a number of features on the iPhone, including its multitouch screen, software, ease of use, and overall user experience. Trial Transcript Day 2 at 436-40, Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK (N.D.Cal.2014) (No. 1622). Other companies followed. Samsung, in particular, developed competing smartphones. Internal Samsung documents show that Samsung “paid close attention to, and tried to incorporate” some of Apple’s patented technology, which was “indicative of copying by Samsung.” Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2014 WL 7496140, at *14 (N.D.Cal. Aug. 27, 2014) (“Injunction Order ”). Today, Apple and Samsung are fierce competitors in the smartphone and tablet market. Id. at *8.
The instant appeal springs from a suit filed by Apple against Samsung in February 2012 alleging infringement of five patents directed to smartphone and tablet interfaces, including the '721 patent, the '647 patent, and the '172 patent. The district court held on summary judgment that Samsung infringed the '172 patent. The case proceeded to trial, and a jury found that nine Samsung products infringed one or both of Apple’s '647 and '721 patents. The jury awarded Apple a total of $119,625,000 for Samsung’s infringement of the three patents.
Following the verdict, Apple filed a motion seeking a permanent injunction that would bar Samsung from, inter alia, making, using, selling, developing, advertising, or importing into the United States software or code capable of implementing the infringing features in its products. That is, Apple did not seek to enjoin Samsung’s infringing smartphones and tablets, but only the infringing features. Moreover, Apple’s proposed injunction included a 30-day “sunset period” that would stay enforcement of the injunction until 30 days *1357 after it was entered by the district court, during which Samsung could design around the infringing features. This “sunset period” coincided with Samsung’s representations at trial that it could remove the infringing features from its products quickly and easily. Injunction Order at *20-22.
Despite the narrowness of Apple’s proposed injunction, the district' court denied Apple’s motion, finding that Apple had not shown that it would suffer irreparable harm without an injunction. Id. at *23. Predicated entirely on this finding, the district court reasoned that Apple could not establish that monetary damages were inadequate. Id. at *19. Although the district court found that the public interest favored Apple’s request and that the narrowness of Apple’s proposed injunction tilted the balance of hardships in Apple’s favor, it determined that these factors did not overcome Apple’s lack of irreparable harm. Id. at *23. Apple appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
Discussion
The Patent Act provides a pátentee with the “right to exclude others from making, using, offering for sale, or selling the [patented] invention.” 35 U.S.C. § 154(a)(1). This right has its roots in the U.S. Constitution’s Intellectual Property Clause, which refers to inventors’ “exclusive Right to their respective ... Discoveries.” U.S. Const. art. I, § 8, cl. 8. In furtherance of this right to exclude, district courts “may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.” 35 U.S.C. § 283. “[N]ot surprisingly], given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use an invention against the patentee’s wishes,” historically courts have “granted injunctive relief upon a finding of infringement in the vast majority of patent cases.” eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 395, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (Roberts, C.J., concurring) (emphasis in original).
A party seeking a permanent injunction must demonstrate:
(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.
Id. at 391, 126 S.Ct. 1837 (majority opinion). The decision to award or deny permanent injunctive relief lies within the equitable discretion of the district court; these traditional equitable principles do not permit the adoption of “certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases.” Id. at 391, 393, 126 S.Ct. 1837. The district court’s decision is reviewable for abuse of discretion. Id. at 391, 126 S.Ct. 1837. A court abuses its discretion when it “ma[kes] a clear error of judgment in weighing relevant factors or exercise[s] its discretion based upon an error of law or clearly erroneous factual findings.” Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1379 (Fed.Cir.2008). We review the district court’s conclusion as to each eBay factor for abuse of discretion and its underlying factual findings for clear error. 141 Ltd. P’ship v. Microsoft Corp., 598 F.3d 831, 861 (Fed.Cir.2010).
A. Irreparable Harm
To satisfy the first eBay factor, the patentee must show that it is irreparably harmed by the infringement. This requires proof that a “causal nexus relates *1358 the alleged harm to the alleged infringement.” Apple Inc. v. Samsung Elecs. Co., 695 F.3d 1370, 1374 (Fed.Cir.2012) (“Apple II ”). This just means that there must be proof that the infringement causes the harm.
Apple argued to the district court that it was irreparably harmed by Samsung’s infringement due to damage to its reputation as an innovator, lost market share, and lost downstream sales. Injunction Order at *6, *11. The district court rejected Apple’s arguments regarding irreparable harm and found that Apple had not shown that a causal nexus connected Samsung’s infringement to these alleged injuries. Id. at *8-9, *11-16. On appeal, Apple argues that the district court erred in a number of ways with respect to this eBay factor. First, Apple argues that the court should not have required Apple to prove that a causal nexus linked Samsung’s infringement to Apple’s harms because Apple’s proposed injunction was limited to the infringing features alone, not the products as a whole. Apple also argues that the court erred when it found that Apple did not suffer irreparable harm stemming from its sales-based losses and from harm to its reputation as an innovator due to Samsung’s infringement. We address each of Apple’s arguments in turn.
1. Causal Nexus Requirement
Apple claims that “[t]he purpose and substance of the causal nexus requirement are necessarily satisfied in this circumstance because there is no risk that Apple might be ‘leveraging its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant.’ ” Appellant’s Br. 33 (quoting Apple, Inc. v. Samsung Elecs. Co., 735 F.3d 1352, 1361 (Fed.Cir.2013) (‘‘Apple III ”) (alterations omitted)). Apple argues that our discussion of causal nexus to date has been limited to cases where the paten-tee sought a product-based injunction. See Apple III, 735 F.3d at 1352; Apple II, 695 F.3d at 1375-76; Apple, Inc. v. Samsung Elecs. Co., 678 F.3d 1314, 1324 (Fed.Cir.2012) (“Apple I ”). Apple asserts that there is no causal nexus requirement when the patentee is seeking, as in this case, a narrow injunction, limited to the infringing features.
Apple misunderstands the purpose of the causal nexus requirement. Although we stated in Apple II that the causal nexus requirement “informs whether the patentee’s allegations of irreparable harm are pertinent to the injunctive relief analysis, or whether the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant,” this statement was incomplete. Apple II, 695 F.3d at 1375. The causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant’s wrongful conduct, not some other reason. For example, it ensures that an injunction is not entered on account of “irreparable harm caused by otherwise lawful competition.” Apple III, 735 F.3d at 1361. Whether a patentee’s irreparable harm stems from infringement of its patents is entirely independent of the scope of the proposed injunction.
And while, in the past, we have only had occasion to require proof of causal nexus for product-based injunctions, we have also rejected Apple’s argument that narrowing the proposed injunction can eliminate the causal nexus requirement. In Apple III, we explained that, while narrowing a proposed injunction by delaying it so that the infringer could design around the infringing features would make it “more likely to prevent only infringing features rather than the sale of entire products,” it did not “show that the paten-tee is irreparably harmed by the infringement.” Id. at 1363 (emphasis in original). *1359 The same is true here. That Apple’s proposed injunction applies only to infringing features says nothing about whether Apple is irreparably harmed by Samsung’s infringement. The purpose of the causal nexus requirement is to establish the link between the infringement and the harm, to ensure that there is “some connection” between the harm alleged and the infringing acts. Id. at 1364. Thus, a causal nexus linking the harm and the infringing acts must be established regardless of whether the injunction is sought for an entire product or is narrowly limited to particular features.
To be sure, the scope of an injunction plays a role in determining whether that injunction is awarded. For example, it is crucial when considering the final two factors of the eBay test. Here, the district court did not err by requiring Apple to satisfy the causal nexus requirement to show irreparable harm.
2. Sales-Based Harm
Apple argues that the district court erred in finding that Apple did not suffer irreparable harm due to lost market share and lost downstream sales stemming from Samsung’s infringement. The district court noted that it was undisputed that Apple lost market share and downstream sales to Samsung. Injunction Order at *11. It was also undisputed that “Apple and Samsung compete directly in the market for smartphones and tablets” and that “this competition affects [Apple’s] downstream sales because of so-called ‘ecosystem’ effects, where one company’s customers will continue to buy that company’s products and recommend them to others.” Id. Moreover, the court wrote that the record established that “the competition between Apple and Samsung was ‘fierce’ ” and that “Apple was Samsung’s ‘largest smartphone competitor’ in the U.S. market.” Id. Because “[w]here two companies are in competition against one another, the patentee suffers the harm — often irreparable — of being forced to compete against products that incorporate and infringe its own patented inventions,” id. (quoting Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1345 (Fed.Cir.2013)), the court found that “[t]he presence of direct competition between Apple and Samsung in the smartphone market weighs in favor of finding irreparable harm,” id.
Despite these findings, the district court found that Apple failed to demonstrate irreparable harm due to lost sales because it failed to show a causal nexus between the infringement and the lost sales. That is, according to the district court, Apple did not show that the infringing features “drive consumer demand for Samsung’s infringing products.” Id. at *13. Here, the district court erred.
When a patentee alleges it suffered irreparable harm stemming from lost sales solely due to a competitor’s infringement, a finding that the competitor’s infringing features drive consumer demand for its products satisfies the causal nexus inquiry. In that case, the entirety of the patentee’s alleged harm weighs in favor of injunctive relief. Such a showing may, however, be nearly impossible from an evidentiary standpoint when the accused devices have thousands of features, and thus thousands of other potential causes that must be ruled out. Nor does the causal nexus requirement demand such a showing. Instead, it is a flexible analysis, as befits the discretionary nature of the four-factor test for'injunctive relief. We have explained that proving a causal nexus requires the patentee to show “some connection” between the patented features and the demand for the infringing products. Apple III, 735 F.3d at 1364.[1] Thus, *1360 in a case involving phones with hundreds of thousands of available features, it was legal error for the district court to effectively require Apple to prove that the infringement was the sole cause of the lost downstream sales. The district court should have determined whether the record established that a smartphone feature impacts customers’ purchasing decisions. Apple III, 735 F.3d at 1364. Though the fact that the infringing features are not the only cause of the lost sales may well lessen the weight of any alleged irreparable harm, it does not eliminate it entirely. To say otherwise would import a categorical rule into this analysis.
The right to exclude competitors from using one’s property rights is important. And the right to maintain exclusivity—a hallmark and crucial guarantee of patent rights deriving from the Constitution itself—is likewise important. “Exclusivity is closely related to the fundamental nature of patents as property rights.” Douglas Dynamics, 717 F.3d at 1345. And the need to protect this exclusivity would certainly be at its highest when the infringer is one’s fiercest competitor. Essentially barring entire industries of patentees— like Apple and other innovators of many-featured products—from taking advantage of these fundamental rights is in direct contravention of the Supreme Court’s approach in eBay. 547 U.S. at 393, 126 S.Ct. 1837 (“[E]xpansive principles suggesting that injunctive relief could not issue in a broad swath of cases ... cannot be squared with the • principles of equity-adopted by Congress.”).
The district court thus erred when it required Apple to prove that the infringing features were the exclusive or predominant reason why consumers bought Samsung’s products to find irreparable harm. See Apple III, 735 F.3d at 1364 (explaining that “[c]onsumer preferences are too complex—and the principles of equity are too flexible” for a patentee to have to show that patented features are the “one and only reason for consumer demand”). Instead, the district court should have considered whether there is “some connection” between the patented features and the demand for Samsung’s products. Id. That is, the district court should have required Apple to show that the patented features impact consumers’ decisions to purchase the accused devices. Id. (explaining that causal nexus can be shown with evidence that “a patented feature is one of several features that cause consumers to make their purchasing decisions”).
The record here establishes that these features do influence consumers’ perceptions of and desire for these products. The district court wrote that there was evidence that Samsung valued the infringing features, including evidence that Samsung “paid close attention to, and tried *1361 to incorporate, certain iPhone features,” which was “indicative of copying.” Injunction Order at *14. This included evidence that Samsung had copied the “slide to unlock” feature claimed in the '721 patent, such as “internal Samsung documents showing that Samsung tried to create unlocking designs based on the iPhone,” id. (citing PX119 (J.A. 20197), PX121 (J.A. 20274, 20347)); testimony from a Samsung engineer about “the value of designs for unlocking,” id. (citing Tr. at 1729:3-11 (J.A. 11735:3-11)); and “Samsung e-mails noting that certain carriers disapproved of the noninfringing ‘circle lock’ alternative,” id. (citing PX181 at 5 (J.A. 21019)). The district court also noted that the jury found that Samsung willfully infringed-the '721 patent. Id. For the '647 patent, evidence of copying included “an internal Samsung report that shows iPhone screens and notes the ‘[njeed to improve usability by providing Links for memo contents,’ ” id. (citing PX146 at 37 (J.A. 20584)), and “an internal Samsung document that copied a figure from the publication of one of the '647 patent’s inventors,” id. (citing PX107 at 52 (J.A. 20063)); see also J.A. 20003 (inventor’s publication). And for the '172 patent, Apple presented evidence that users criticized Samsung’s noninfringing keyboards and word-correction designs. Injunction Order at *14 (citing PX168 at 4 (J.A. 20985), PX169 at 4 (J.A. 21006), PX219 at 104 (J.A. 21318)); see also J.A. 10700-02 (explaining that a Samsung carrier found Samsung’s non-infringing word-correction method “jarring,” which Samsung resolved by going to the word-correction method described in the '172 patent). Finally, the district court held that Apple had shown that it too found the “slide to unlock” feature claimed in the '721 patent valuable to consumers. Injunction Order at *15 (citing Tr. at 432:20-433:18 (J.A. 10433:20-10434:18); Tr. at 600:23-601:15 (J.A. 10602:23-10603:15)); see also J.A. 21014 (Apple’s first iPhone ad, which opened with imagery of the “slide to unlock” feature). The district court rejected this evidence as insufficient to establish the requisite causal nexus. Injunction Order at *13-15 (citing Apple I, 678 F.3d at 1327-28; Apple III, 735 F.3d at 1367). In doing so, the district court relied on our previous statements that copying is not sufficient to show causal nexus:
While the evidence that Samsung’s employees believed it to be important to incorporate the patented feature into Samsung’s products is certainly relevant to the issue of nexus between the patent and market harm, it is not dispositive. That is because the relevant inquiry focuses on the objective reasons as to why the patentee lost sales, not on the in-fringer’s subjective beliefs as to why it gained them (or would be likely to gain them).
Apple I, 678 F.3d at 1327-28.
The district court was correct that evidence of copying does not, by itself, establish a causal nexus. But that does not make the evidence wholly irrelevant. Here, too, we must avoid categorical rules. Where the precise question is about consumer preferences and buying choices, thé strength and weight to be given to such evidence is to be determined on a case-by-case basis based on what the evidence indicates. Sometimes this evidence will have little or no probative value, for example, if the record contains evidence that the infringer’s belief may be at odds with consumer preferences. But here, Apple’s evidence of copying established a further link between Apple’s and Samsung’s subjective beliefs and consumers’ perceptions, thereby strengthening a causal nexus and irreparable harm to Apple. The dissent criticizes Apple’s evidence of copying as “lacking] any connection to the critical details that define the patented features.” Dissent 10. The district court made no *1362 such findings. Injunction Order at *14. The district court acknowledged that Apple presented evidence that carriers (’721 patent) and users (T72 patent), not just Samsung, preferred and valued the infringing features and wanted them in Samsung phones. Id. It also acknowledged that Apple presented evidence that carriers or users disapproved of Samsung’s alternative to the infringing features. The court failed td appreciate, however, that this evidence did not just demonstrate that Samsung valued the patented features, but also that its carriers or users valued the features. The district court further correctly concluded that the '721 patent’s features are valuable to Apple’s consumers. Id. at *15. It was legal error for the district court to reject such strong evidence in this case because Apple presented evidence showing that Samsung’s subjective beliefs are indicative of consumers’ perceptions of the infringing features. Given the strength of the evidence of copying and Samsung’s professed belief in the importance of the patented features as a driver of sales, and the evidence that carriers or users also valued and preferred phones with these features, the district court erred by disregarding this evidence, which further establishes a causal nexus and Apple’s irreparable harm.
Furthermore, this record contained Dr. John Hauser’s conjoint study, which established that consumers would not have purchased a Samsung phone if it lacked the patented features, that they valued these features, and that they were willing to pay considerably more for a phone that contained these features. Injunction Order at *12; see also J.A. 20491-98 (survey results showing that many respondents would not purchase a Samsung phone without the infringing features); J.A. 20539 (results showing that respondents were willing to pay more for devices that included the infringing features). Based on the results, Dr. Hauser concluded that “[t]he features, that were enabled by the patents at issue in this case have a measurable impact on consumer demand for Samsung telephones, smartphones, and tablets.” J.A. 11130. The district court appeared to disregard the Hauser study, writing that “[t]he weight of the evidence shows that [the Hauser study] fails to demonstrate that the features claimed in the '647, '721, and '172 patents drive consumer demand for Samsung’s infringing products.” Injunction Order at *13. The district court’s decision seems to be predicated on an incorrect understanding of the nature of the causal nexus requirement, as discussed above.
In short, the record establishes that the features claimed in the '721, '647, and '172 patents were important to product sales and that customers sought these features in the phones they purchased. While this evidence of irreparable harm is not as strong as proof that customers buy the infringing products only because of these particular features, it is still evidence of causal nexus for lost sales and thus irreparable harm. Apple loses sales because Samsung products contain Apple’s patented features. The district court therefore erred as a matter of law when it required Apple to show that the infringing features were the reason why consumers purchased the accused products. Apple does not need to establish that these features are the reason customers bought Samsung phones instead of Apple phones — it is enough that Apple has shown that these features were related to infringement and were important to customers when they were examining their phone choices. On this record, applying the correct legal standard for irreparable harm, Apple has established irreparable harm. The strength of its evidence of irreparable harm goes to this factor’s weight when assessing the propriety of the injunction. Apple established that customers wanted, *1363 preferred, and would pay extra for these features. Apple established that Samsung believed these features were important and copied them. The evidence establishes that Samsung’s carriers and users wanted these .features on phones. The evidence establishes that Apple believed these features were important to customer demand. The evidence establishes that Samsung was Apple’s biggest rival, its fiercest competitor. It was clear error in the face of this evidence for the district court to conclude that Apple failed to establish “some connection” between the patented features and demand for the infringing products. Apple did not establish that that these features were the exclusive or significant driver of customer demand, which certainly would have weighed more heavily in its favor. We conclude that this factor weighs in favor of granting Apple’s injunction.
B. Inadequate Remedy at Law
The second eBay factor is whether “remedies available at law, such as monetary damages, are inadequate to compensate” for the irreparable harm suffered by the patentee. 547 U.S. at 391, 126 S.Ct. 1837.
The district court found that Apple’s sales-based losses were difficult to quantify. Injunction Order at *18. In support, the district court cited testimony by Mr. Phil Schiller, an Apple marketing executive; testimony by Apple’s damages expert; and its own past findings on the subject in the context of the Apple-Samsung litigation. Id. at *17. We agree with the district court’s analysis. Sales lost by Apple to Samsung are difficult to quantify due to the “ecosystem effect” — that is, the effect the sale of a single product can have on downstream sales of accessories, computers, software applications, and future smartphones and tablets. Id.; see also J.A. 10449-50. In addition to the downstream sales to the individual customer, Mr. Schiller testified that individual customers have a “network effect,” by which they advertise Apple’s product to their friends, family, and colleagues. J.A. 10449-50. Thus, the loss by Apple of a single smartphone or tablet customer may have a far-reaching impact on Apple’s future revenues. Because of its variable and uncertain nature, this loss is very difficult to calculate.
Despite its finding that Apple’s sales-based losses were difficult to quantify, the district court nonetheless found that this factor weighed against injunctive relief baséd on its determination that Apple had failed to establish any irreparable harm. Injunction Order at *19. Apple argues that if we reverse the court on that point, this factor will also tip in its favor. We agree. Because we find the district court’s finding that Apple did not suffer any irreparable harm stemming from its losses of sales was predicated on a legal error, it also erred when it found that this factor weighs against an injunction. This factor strongly weighs in favor of Apple because, as the district court found, the extent of Apple’s downstream and network effect losses are very difficult to quantify.
C. Balance of Hardships
To satisfy the third eBay factor, the patentee must show that the balance of hardships weighs in its favor. 547 U.S. at 391, 126 S.Ct. 1837. This factor “assesses the relative effect of granting or denying an injunction on the parties.” 141 598 F.3d at 862. Because “Apple’s proposed injunction targets only specific features, not entire products” and contains a 30-day “sunset provision,” Injunction Order at *20-21, and because “Samsung repeatedly told the jury that designing around the asserted claims of the three patents at issue would be easy and fast,” id. at *22, the district court found that Samsung would “not face any hardship” from Apple’s proposed in *1364 junction, id. at *19. The court, reasoning that “requiring a patentee to ‘compete against its own patented invention ... places a substantial hardship’ on the pat-entee,” found that Apple would suffer hardship without an injunction. Id. at *22 (quoting Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1156 (Fed.Cir.2011)). The court therefore found that this factor weighed in Apple’s favor. We agree. This factor strongly favors granting Apple the relief requested.
Samsung argues that the district court erred in finding the' balance of hardships favors the entry of an injunction. It argues that Apple will not suffer any hardship in the absence of an injunction because the patented features are minor components in a complex device. Samsung argues that it and its carriers, retailers, and customers would suffer substantial hardship if an injunction issued, particularly because the proposed injunction would extend to unadjudicated products with software that is “capable of implementing” the infringing features or other features “not eolorably different.” Appellees’ Br. 55 & n. 14 (quoting J.A. 2698).
The district court did not abuse its discretion in finding the balance of hardships favors an injunction; to the contrary, this factor strongly weighs in favor of an injunction. Samsung’s infringement harmed Apple by causing lost market share and lost downstream sales and by forcing Apple to compete against its own patented invention, which “places a substantial hardship” on a patentee, especially here where it is undisputed that it is essentially a two-horse race. Bosch, 659 F.3d at 1156. Furthermore, as the district court found, Apple’s proposed injunction was narrowly tailored to cause no harm to Samsung other than to deprive it of the ability to continue to use Apple’s patented features. Injunction Order at *21-22. The court has overseen the Apple-Samsung litigation from the beginning and has worked extensively with parties and their counsel. Given the court’s familiarity with the infringing products, the parties, and their history of litigation, it is best-positioned to determine the impact of the scope of the injunction on the parties. Furthermore, the district court presided over a trial in which Samsung’s witnesses and counsel assured the jury that design-arounds to the infringing features would be “simple or already exist.” Id. at *20. And Samsung asserted at oral argument that none of the products it currently sells practice the '721 patent or the '172 patent, and that only a single product practices the '647 patent. Oral Argument at 31:10-31:48, available at http://oralarguments.cafc.uscourts.gov/ default.aspx?fl=2014-1802.hap3. As we wrote in Douglas Dynamics, when the in-fringer “ha[s] a non-infringing alternative which it could easily deliver to the market, then the balance of hardships would suggest that [it] should halt infringement and pursue a lawful course of market conduct.” 717 F.3d at 1345. On this record, it is clear — Samsung will suffer relatively little harm from Apple’s injunction, while Apple is deprived of its exclusivity and forced to compete against its own innovation usurped by its largest and fiercest competitor. Given the narrow feature-based nature of the injunction, this factor strongly weighs in favor of granting Apple this injunction.
D. Public Interest
The fourth eBay factor requires the patentee to show that “the public interest would not be disserved by a permanent injunction.” 547 U.S. at 391, 126 S.Ct. 1837. The district court found that the public interest “favor[s] the enforcement of patent rights to promote the encouragement of investment-based risk,” particularly where, as here, the patentee’s proposed *1365 injunction is narrow in scope and includes a sunset provision limiting the impact of the injunction on consumers. Injunction Order at *22-23 (quotation marks omitted). The court also noted that “an injunction may prompt introduction of new alternatives to the patented features.” Id. at *23. It. therefore concluded that the public interest factor favors Apple.
Samsung argues that the district court erred in finding the public interest weighs in favor of an injunction. Samsung also argues that the proposed injunction, while styled as harrow, is actually quite broad and would lead to the removal of products from store shelves, which it argues would harm the public interest. Samsung also argues that the public has a strong interest in competition and the resulting variety of product choices, and that the cost of administering this injunction would be great.
The district court did not abuse its discretion in finding that the public interest favors an injunction. Indeed, the public interest. strongly favors an injunction. Samsung is correct — the public often benefits from healthy competition. However, the public generally does not benefit when that competition comes at the expense of a patentee’s investment-backed property right. To conclude otherwise would suggest that this factor weighs against an injunction in every case, when the opposite is generally true. We base this conclusion not only on the Patent Act’s statutory right to exclude, which derives from the Constitution, but also on the importance of the patent system in encouraging innovation. Injunctions are vital to this system. As a result, the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions. “[T]he encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.” Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1383 (Fed.Cir.2006) (quotation marks omitted).
This is not a case where the public would be deprived of Samsung’s products. Apple does not seek to enjoin the sale of lifesaving drugs, but to prevent Samsung from profiting from the unauthorized use of infringing features in its cellphones and tablets. Again, Apple seeks only a narrow feature-based injunction commensurate in scope with its monopoly rights. And the evidence of record is that Samsung can effect the removal of the patented features without recalling any products or disrupting customer use of its products. Apple has not attempted to expand the scope of its monopoly. Given the important public interest in protecting patent rights, the nature of the technology at issue, and the limited nature of the injunction, this factor strongly favors an injunction.
Conclusion
The district court erred when it found the first two eBay factors weighed against an injunction. Although the evidence may not make a strong case of irreparable harm, Apple has satisfied the causal nexus requirement and. therefore established irreparable harm.[2] Apple has also established that the harm it will suffer is not easily compensable at law. Moreover, as the district court found, the balance of hardships and public interest weigh *1366 strongly in favor of an injunction. Given this, the district court abused its discretion when it did not enjoin Samsung’s infringement. If an injunction were not to issue in this case, such a decision would virtually foreclose the possibility of injunctive relief in any multifaceted, multifunction technology. We vacate the district court’s order denying Apple’s proposed injunction and remand for further proceedings consistent with this opinion.
VACATED AND REMANDED
Costs
Each party shall bear its own costs.

. As we explained in Apple III, "some connection” between the patented feature and con *1360 sumer demand for the products may be shown in "a variety of ways,” including, for example, “evidence that a patented feature is one of several features that cause consumers to make their purchasing decisions,” "evidence that the inclusion of a patented feature makes a product significantly more desirable,” and "evidence that the absence of a patented feature would make a.product significantly less desirable.” Id. These examples do not delineate or set a floor on the strength of the connection that must be shown to establish a causal nexus; rather, they are examples of connections that surpass the minimal connection necessary to establish a causal nexus. Apple III included a fourth example to demonstrate a connection that does not establish a causal nexus—where consumers are only willing “to pay a nominal amount for an infringing feature.” Id. at 1368 (using example of $10 cup holder in $20,000 car). There is a lot of ground between the examples that satisfy the causal nexus requirement and the example that does not satisfy this requirement. The required minimum showing lies somewhere in the middle; as reflected by the "some connection” language.

. Because we hold that the district court erred when it found that Apple did not suffer irreparable harm stemming from its sales-based losses, see supra at 1359-63, and that on this record and consistent with the other holdings of the district court, this harm is sufficient to justify an injunction, see infra at 1365-66, we do not reach the issue of whether Apple also suffered irreparable reputational harm.